IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOHN C. MCDONALD,

          Plaintiff,

v.                                                                  CIVIL ACTION NO.   2:19-cv-00784

ALTICE TECHNICAL SERVICES US CORP., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff John McDonald's ("Plaintiff") Motion to Remand, (ECF No. 14); Plaintiff's Supplemental Motion to Remand, (ECF No. 46); Plaintiffs Second Supplemental Motion to Remand, (ECF No. 74); and Plaintiff's Third Supplemental Motion to Remand, (ECF No. 113).   Also pending is Defendants Altice Technical Services US Corp., Altice Technical Services US LLC, Altice USA Inc., Altice Technical Services US LLC, Universal Cable Holdings, Inc. d/b/a Suddenlink Communications, Duska Arbaugh, John Morr, Larry Hoyle, and Joshua Hypes' (collectively "Defendants") Motion to Exceed Page Limit, (ECF No. 8); Defendants' Motion to Dismiss, (ECF No. 9); Plaintiff's Motion to Strike Notice of Removal, (ECF No. 16); and Plaintiff's Motion to Amend Complaint, (ECF No. 28).[1]   For the reasons discussed more fully below, the Court **GRANTS** Plaintiff's motions to remand, (ECF Nos. 14, 46, 74, 113), and **DENIES** fees and costs.

---

[1] Also pending is Defendants' Motion to Enforce the Parties' Stipulation to Stay Discovery.  (ECF No. 41.)  The Court chose not the adopt the proposed stay.  Accordingly, Defendants' Motion, (ECF No. 41), is **DENIED AS MOOT**.

1

## I. BACKGROUND

Plaintiff John C. McDonald filed this action alleging his employment was unlawfully terminated while he was on medical leave. (ECF No 1–1.) In May of 2019, Plaintiff was allegedly injured on the job and put on medical leave while employed by Defendant Altice Technical Services US Corp., Altice Technical Services US, LLC, Altice USA, Inc., Altice Technical Services US LLC, and Universal Cable Holdings, Inc. d/b/a Suddenlink Communications (collectively "Altice"). (*Id.* at 4, ¶ 17–20.) Plaintiff is a resident of West Virginia, while Defendants Altice Technical Services US Corp., Altice USA, Inc., and Universal Cable Holdings, Inc. d/b/a Suddenlink Communications are all citizens of either the State of Delaware or the State of New York. (ECF No. 24 at 6.) Plaintiff has brought claims against two entities named Altice Technical Services US LLC and the parties dispute the citizenship of these entities.[2] (ECF No. 1–1 at 5, ¶¶ 3,5.)

Plaintiff alleges he advised his direct supervisor Joshua Hypes ("Hypes"), a West Virginia resident and employee of Altice, about his injury and that Plaintiff's doctor had ordered him off work until May 29, 2019. (*Id.* at 8, ¶ 22.) Plaintiff alleges that his doctor extended his work excuse until June 3, 2019, and that he communicated this to Hypes. (*Id.* ¶¶ 23–26.) Despite this excuse, Plaintiff alleges Larry Hoyle, a West Virginia Resident and the Director of Technical Operations for Altice, had the Kanawha County Sherriff's Department appear at Plaintiff's home to advise Plaintiff of his termination and to retrieve his work vehicle owned by Altice. (*Id.* at 8, ¶ 30.) On May 30, 2019, Plaintiff states Duska Arbaugh, a West Virginia resident and the

---

[2] Plaintiff argues one entity is a citizen of West Virginia and the other is a citizen of Delaware, (ECF No. 31 at 1), while Defendants contend that there is only one Altice Technical Services US LLC entity and it was a citizen of New York and Delaware, (ECF No. 24 at 7). Further, Defendants argue the sole Altice Technical Services US LLC entity is currently undergoing dissolution. (*Id.*)

2

Regional Human Resources Manager for the area in which Plaintiff worked, issued a termination letter to Plaintiff. (*Id.* ¶ 26.)

Defendants heavily dispute Plaintiff's factual allegations and instead argue that Plaintiff left in the middle of his shift on May 8, 2019, for his girlfriend's medical condition. (ECF No. 24 at 2.) Defendants then state that Plaintiff did not return to work until May 17, 2019, and failed to apply for an approved leave of absence for that time. (*Id.*) Next, on May 21, 2019, Defendants allege Plaintiff texted Hypes stating he needed another employee to cover his shift because he was suffering from a pulled muscle in his groin. (*Id.*) On May 23, 2019, Defendants state Plaintiff emailed an insufficient, partial photo of a doctor's note that stated Plaintiff could return to work on May 29, 2019. (*Id.* at 3.) Plaintiff failed to return to work on that date, and Arbaugh prepared a termination letter because the company considered Plaintiff's failure to report to work as job abandonment. (*Id.*) Finally, after the termination letter was sent, Defendants allege Plaintiff provided another insufficient, partial photograph of a doctor's note. (*Id.*)

On October 22, 2019, Plaintiff filed this action in the Circuit Court of Kanawha County, West Virginia, alleging wrongful discharge under the West Virginia Human Rights Act ("WVHRA") and related claims. (ECF No. 1–1.) On October 25, 2019, Defendant Altice Technical Services US Corp removed this case to this Court asserting diversity as the sole basis for this Court's jurisdiction. (ECF No. 1.) Further, on December 31, 2019, Defendants filed their First Amended Notice of Removal asserting federal question jurisdiction as a second basis for jurisdiction. (ECF No. 37.)

On November 22, 2019, Plaintiff filed his Motion to Remand. (ECF No. 14.) Defendant timely responded, (ECF No. 24), and Plaintiff replied, (ECF No. 31). On January 29, 2020,

3

Plaintiff filed his Supplemental Motion to Remand. (ECF No. 46.) Defendant timely responded, (ECF No. 47), and Plaintiff replied, (ECF No. 50). On March 31, 2020, Plaintiff filed his Second Supplemental Motion to Remand. (ECF No. 74). Defendant timely responded, (ECF No. 79), and Plaintiff replied, (ECF No. 82). Finally, on September 1, 2020, Plaintiff filed his Third Supplemental Motion to Remand. (ECF No. 113.) Defendant timely replied, (ECF No. 118), and Plaintiff replied, (ECF No. 119). As such, these motions are fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States . . . ." U.S. Const. art. III, § 2. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The Supreme Court has long "read the statutory formulation 'between . . . citizens of different States'" in Section 1332(a)(1) "to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). "[T]he 'complete diversity' rule clarifies that the statute authorizing diversity jurisdiction over civil actions between a citizen of a state where the suit is brought and a citizen of another state permits jurisdiction only when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citation omitted).

Congress provided a right to remove a case from state to federal court under 28 U.S.C. § 1441. This statute states, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). "[F]ederal jurisdiction . . . is fixed at the time the . . . notice of removal is filed." *Dennison v. Carolina Payday Loans, Inc.,* 549 F.3d 941, 943 (4th Cir. 2008) (citing *Mollan v. Torrance,* 22 U.S. (9 Wheat) 537, 539, 6 L.Ed. 154 (1824)). "The burden of establishing federal jurisdiction is placed upon the party seeking removal," *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted), and defendants have the burden to show the existence of federal jurisdiction by a preponderance of the evidence, *Johnson v. Nutrex Research, Inc.,* 429 F.Supp.2d 723, 726 (D. Md. 2006) (citing *Schwenk v. Cobra Mfg. Co.,* 322 F.Supp.2d 676, 678 (E.D. Va. 2004)).

> Section 1447, in turn, governs the remand procedure and provides, in relevant part:
>
> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

28 U.S.C. § 1447(c). Because removal of civil cases from state to federal court infringes state sovereignty, courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined."); *Mulcahey,* 29 F.3d at 151 ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.") (citation omitted); *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993) (noting "Congress'

clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction") (citation omitted).

### III. DISCUSSION

#### A. Diversity Jurisdiction

The sole issue before the Court is whether diversity jurisdiction exists.[3] Plaintiff has named three nondiverse Defendants in his Complaint. Further, the Supreme Court has long "read the statutory formulation 'between . . . citizens of different States'" in Section 1332(a)(1) "to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop.*, 546 U.S. at 89. Normally, this Court could not exercise diversity jurisdiction because Plaintiff and Defendants Arbaugh, Hoyle, and Hypes are all West Virginia residents. However, the Notice of Removal[4] asserts that complete diversity exists because Plaintiff fraudulently joined Arbaugh, Hoyle, and Hypes solely for the purpose of defeating diversity jurisdiction. (ECF No. 1 at 3, ¶ 10.) The fraudulent joinder doctrine allows the district court to disregard the citizenship of nondiverse defendants if the defendants can prove that the plaintiff joined the nondiverse

---

[3] At several points in their briefing, Defendants mention that no Defendants had been served at the time of removal. However, the Supreme Court is clear that "where a non-separable controversy involves a resident defendant . . . the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant." *Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1939). Thus, the fact that Plaintiff had not served any Defendant before the case was removed has no bearing on the determination whether diversity jurisdiction exists in this case.

[4] On December 31, 2019, Defendants filed their First Amended Notice of Removal, without first seeking approval from this Court, to assert federal question jurisdiction as a second basis for removal. (ECF No. 37 at 1–2.) Defendants fail to cite a single statement of law supporting its right to amend. That is likely because the Fourth Circuit has specifically held that, "after thirty days, district courts have discretion to permit amendments that correct allegations already present in the notice of removal. *Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis.*" *Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014) (emphasis added) (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831 (1989)). In this case, Defendants, on their own, amended their notice of removal to assert an addition basis for jurisdiction over 60 days after removal. There are multiple issues with this filing, the largest of which being that Defendants are never permitted to assert additional bases for jurisdiction after removal, even with permission from this Court. Accordingly, the Court disregards Defendants' First Amended Notice of Removal. (ECF No. 37.) Defendants arguments relating to federal question jurisdiction were improperly raised and will not be considered.

defendants solely for the purpose of destroying the defendant's right to removal. *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). Because three Defendants are West Virginia residents, this Court must remand this case unless Defendants establish that Arbaugh, Hoyle, and Hypes were all fraudulently joined.

The Fourth Circuit has held that

> [i]n order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: "[T]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

*Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981)). "A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Id.* at 232–33. Further, "[t]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 465 (4th Cir. 1999). Finally, the burden on the party alleging fraudulent joinder is heavy and "it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)).

Here, Defendants do not assert outright fraud but instead argue there is no possibility that Plaintiff can succeed on any of his statutory and common law claims against Arbaugh, Hoyle, and Hypes. In his Complaint, Plaintiff asserts the following claims: (1) Count I for wrongful discharge in violation of the WVHRA against all Defendants; (2) Count II for failure to accommodate in violation of the WVHRA against all Defendants; (3) Count III for retaliation in

7

violation of the WVHRA against all Defendants; (4) Count IV for intentional infliction of emotional distress against all Defendants; (5) Count V for tort of outrage/intentional infliction of emotional distress against all Defendants; (6) Count VI for civil conspiracy against all Defendants; (7) Count VII for negligent hiring, training, retention and/or supervision against the Altice Defendants only; (8) Count VIII for vicarious liability against the Altice Defendants; (9) Count IX for wrongful discharge and discrimination against all Defendants; and (10) Count X for punitive damages against all Defendants. (ECF No. 1–1 at 8–21, ¶¶ 31–98.) Defendants must prove there is no possibility that Plaintiff can succeed on any of his claims against Arbaugh, Hoyle, and Hypes in order to prevent remand.[5]

---

[5] The parties dispute the standard applied in this Circuit for "no possibility" fraudulent joinder claims. Defendants argue that "courts in this circuit examine both whether there is no possibility of a successful claim against the in-state defendant and *whether the plaintiff really intends to obtain a joint judgment*." (ECF No. 24 at 6 (emphasis added).) To support the application of the "real intention" standard, Defendants rely only on the United States District Court for the Eastern District of Virginia's decision in *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 816 (E.D. Va. 2005). *Linnin*'s application of the "real intention" standard is based on the Fourth Circuit's decision in *AIDS Counseling & Testing Ctrs. v. Grp. W Tel. Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990). In *AIDS Counseling*, the Fourth Circuit held that the "no possibility" standard is to be applied reasonably not rigidly and the district court is not bound by the pleadings and may instead consider the entire record to determine if the plaintiff had a "real intention to get a joint judgment." *Id.* at 1003–04. In that case, the plaintiffs moved to amend their complaint shortly after the case was removed and sought to add a nondiverse defendant who "played no part" in the facts giving rise to this dispute. *Id.* at 1003. The district court looked outside the pleadings to determine whether to grant the motion to amend. *Id.* at 1002-03. The Fourth Circuit held that the district court did not abuse its discretion and further stated that "in order to determine whether *an attempted joinder* is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Id.* at 1004 (emphasis added).

There is some confusion surrounding the standards articulated in *AIDS Counseling*, and the Fourth Circuit has not provided further direction on when a district court should use the "real intention" standard or when the court may consider the entire record. From an analysis of Fourth Circuit precedent, it appears that the "no intention" standard is only applied in cases like *AIDS Counseling* where the plaintiff attempts to add a non-diverse defendant after removal. The Fourth Circuit has cited *AIDS Counseling* only once in a published opinion and that case, like *AIDS Counseling*, also involved a plaintiff that attempted to join a nondiverse defendant after the case had been removed. *See Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir.1999). It has now been 30 years since the Fourth Circuit's decision in *AIDS Counseling* and *Mayes* remains the sole published opinion to cite it. More curiously, *Mayes* does not apply the "real intention" standard but instead relies on the well-established "no possibility" test. *Id.* at 463. Further, the Fourth Circuit's most recent fraudulent joinder decision relies solely on the "no possibility" standard. *See Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264 (4th Cir. 2015). Accordingly, this Court applies only the "no possibility" standard here.

Further, the Court notes that the "no intention" standard is impossible to apply in practice. As Judge Ellis noted in his decision in *Allard*, "[p]laintiffs often have mixed motives when naming defendants in a lawsuit, and short

1. <u>Plaintiff's Count I Wrongful Discharge Claim Against Hypes</u>

Plaintiff has brought a claim against Hypes for wrongful discharge in violation of the WVHRA. The WVHRA states that it is an unlawful discriminatory practice

[f]or any person . . . to:

> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section . . . .

W. Va. Code § 5-11-9(7)(A). Under this Section, Hypes can be held liable for his discriminatory practices as a person. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

"To establish a prima facie case of disability discrimination under the WVHRA, Plaintiff must show that (1) he meets the definition of 'disabled' within the law's meaning; (2) he is a 'qualified disabled person;' and (3) he was discharged from his job." *Lindenmuth v. Lab. Corp. of Am.*, No. 2:15-CV-13368, 2016 WL 5109159, at *3 (S.D. W. Va. Sept. 19, 2016). The term

---

of employing a lie detector test, a brain scan, or something of the like, a district court is not well situated to ferret out a plaintiff's real intention." *Allard v. Laroya*, 163 F. Supp. 3d 309, 313 n.3 (E.D. Va. 2016).

There is further uncertainty over when a district court may consider the entire record in fraudulent joinder actions. In the Eastern District of Virginia's decision in *Allard*, 163 F. Supp. 3d 309, the court held that "it is appropriate to consider the entire record when addressing whether a plaintiffs post-removal attempt to join a party is fraudulent, but these cases do not support the proposition that it is appropriate to look beyond the pleadings where, as here, a plaintiff named a nondiverse defendant in its initial complaint in state court." *Id.* at 312. The court in *Allard* relied on the Fourth Circuit's decisions in *AIDS Counseling* and *Mayes* to make this determination. Further, in its last three fraudulent joinder opinions, the Fourth Circuit did not cite the standard from *AIDS Counseling* which allows the court to consider the entire record. *See Hughes*, 617 F. App'x at 264; *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015); *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015). Accordingly, this Court did not consider Defendants' affidavits, (ECF Nos. 24–1, 24–2), Plaintiff's exhibits, or any other documents outside of the pleadings. Further, this Court did not consider Plaintiff's Second or Third Supplemental Motions to Remand, (ECF Nos. 74, 113), because these supplemental motions were filed solely to supplement Plaintiff's original motion with information learned and documents acquired during discovery.

Finally, even assuming this is the standard, Defendants have not carried their burden. The Court would be unable to find that Arbaugh, Hoyle, and Hypes were all fraudulently joined even if it considered the entire record or Plaintiff's intention to get a joint judgment.

"discriminate" is defined as excluding "from, or fail or refuse to extend to, a person equal opportunities because of . . . disability." W.Va. Code § 5-11-3(h). A "disability" is defined in three parts. The plaintiff must prove he either suffered from "'[a] mental or physical impairment;' substantially limiting one or more of his major life activities, including working; that a record of such an impairment exists; or that he was 'regarded as having such an impairment' by his employer." *Id.* (citing W. Va. Code § 5-11-3(m)(1)–(3)). This Court has previously summarized these three elements as follows: (1) "a physical or mental impairment substantially limiting one or more major life activities (disabled in fact); or (2) is either correctly or incorrectly regarded as having an impairment and/or substantial limitation (regarded as disabled)." *Ruckel v. Sears, Roebuck & Co.*, 287 F. Supp. 2d 652, 655 (S.D. W. Va. 2003) (quoting Syl. Pt. 3, *Stone v. St. Joseph's Hosp.*, 538 S.E.2d 389 (W. Va. 2000)). In this case, Plaintiff does not appear to claim he suffered a disability in fact and instead makes claims relating to the notice he supplied to Hypes. As a result, the Court will assume, for the purposes of this motion, that Plaintiff intends to pursue a claim that Hypes regarded him as disabled. (ECF No. 1–1 at 9–10, ¶¶ 31–46.)

Even if the plaintiff does not claim he was disabled in fact, he may still pursue a claim under the premise that his employer regarded him as being disabled and it is irrelevant whether the employer's belief was correct. *Ruckel*, 287 F.Supp.2d at 655. "An employee is 'regarded as' disabled under the WVHRA if his employer treats him 'as a person who should not be entrusted with the duties of his regular job.'" *Garvin v. World Color Printing (USA) II Corp.*, No. 3:10-CV-74, 2011 WL 1485998, at *9 (N.D. W. Va. Apr. 19, 2011) (quoting *Stone v. St. Joseph's Hosp. of Parkersburg*, 538 S.E.2d 389, 406 (W. Va. 2000)). As the Supreme Court of Appeals of West Virginia explained in *Stone*, the WVHRA "protects persons who are discriminatorily treated as

having a substantially limiting impairment," and that "[t]his component of the Act's prohibitions is an objective test that does not focus on the subjective motivation behind the behavior in question, but on the behavior itself." *Stone*, 538 S.E.2d at 407 n. 25

Next, a "qualified disabled person" is defined as one who is able "to perform essential functions of the job" whether or not he requires reasonable accommodation. *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561, 573–74 (W. Va. 1996). If an employee is suffering from a temporary disabling medical condition, the employee is still considered a "qualified disabled person" if he is still unable to perform his job duties and is required to take a temporary leave of absence from work because of his temporary disability. *Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331, 339 n.17 (W. Va. 1999).

Finally, the plaintiff must establish that the circumstances surrounding his discharge "involve at least an inference of discrimination where that employee was treated less favorably than similarly situated workers who were not in the employee's protected class." *Lindenmuth*, 2016 WL 5109159, at *4 (internal quotations omitted). "[P]laintiffs establishing a prima facie case of employment discrimination, must demonstrate at least an inference, link, or motivation, between the defendant's employment decision and his status within the protected class." *Id.*

First, Plaintiff must show that he meets the definition of "disabled." Plaintiff alleges he suffered a pulled muscle in his groin and then saw a doctor who provided him with a work excuse. From these facts, the Court will infer that Plaintiff is seeking a claim for being regarded as disabled. "An employee is 'regarded as' disabled under the WVHRA if his employer treats him 'as a person who should not be entrusted with the duties of his regular job.'" *Garvin*, 2011 WL 1485998, at *9. Plaintiff has alleged that he communicated his medical condition and work excuse to his

supervisor Hypes. (ECF No. 1–1 at 8, ¶ 22.) Plaintiff took off work for the time periods provided in his work excuses, and Plaintiff alleged Hypes was aware of Plaintiff's injury and required leave. By allowing Plaintiff to take this time off and honoring his work excuses, Hypes likely regarded Plaintiff as being disabled. Resolving all legal and factual issues in favor of Plaintiff, he has shown he has at least a "glimmer of hope" of demonstrating he meets the definition of disabled under the law. *Johnson*, 781 F.3d at 704.

Next, Plaintiff must show he is a "qualified disabled person." Plaintiff suffered a pulled groin muscle that required medical attention and prompted his doctor to order him off work from May 22, 2019 until June 3, 2019. (ECF No. 1–1 at 8, ¶¶ 22–23.) This temporary disabling condition required Plaintiff to take time off work because his doctor determined that Plaintiff was unable to perform his job duties during that time. Again, under the generous fraudulent joinder standard, Plaintiff has shown he has at least a "glimmer of hope" of demonstrating he was a qualified disabled person. *Johnson*, 781 F.3d at 704.

Finally, Defendants state that Plaintiff was discharged for job abandonment because he failed to return to work. (ECF No. 24 at 3.) This is sufficient to demonstrate "at least an inference, link, or motivation" between Plaintiff's termination and his temporary disability. *Lindenmuth*, 2016 WL 5109159, at *4. Thus, Plaintiff has again shown he has at least a "glimmer of hope" of succeeding against Hypes on his wrongful discharge claim. Even one nondiverse Defendant destroys diversity. *Mayes*, 198 F.3d at 461. As a result, this Court is not required to consider Defendants' arguments relating to Arbaugh and Hoyle or the dispute surrounding the citizenship of the two Altice Technical Services US LLC entities.

Additionally, Defendants mention the forum defendant rule in both their Notice of

Removal and Response. Specifically, Defendants argue that no Defendants had been served at the time of removal so the forum defendant rule did not prevent removal. (ECF No. 1 at 3–4, ¶ 11; ECF No. 24 at 5.) Plaintiff construes Defendants' statements as an argument that the forum defendant rule provides an additional basis for removal. (ECF No. 15 at 6.) The forum defendant rule states that an action "otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This provision, "commonly known as the 'forum defendant rule,' is separate and apart from the statute conferring diversity jurisdiction . . . [and] confines removal on the basis of diversity to instances where no defendant is a citizen of the forum state." *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 548 (S.D. W. Va. 2015) (quoting *Councell v. Homer Laughlin China Co.*, 823 F.Supp.2d 370, 377 (N.D. W. Va. 2011)). Quite simply, the forum defendant rule does not provide an additional basis for jurisdiction. Further, since complete diversity did not exist at the time of removal, this Court does not apply the forum defendant rule or the purported exception described by Defendants.[6]

---

[6] Courts within this district have reached the same conclusion in almost identical circumstances. *See Cook v. Bob Evans Farms, Inc.*, No. 2:11-CV-01017, 2012 WL 407261, at *4 (S.D. W. Va. Feb. 8, 2012) (Goodwin, J.); *Justice v. Branch Banking & Trust Co.*, No. 2:08–230, 2009 WL 853993, at *5 (S.D. W. Va. Mar. 24, 2009) (Copenhaver, J.). In both those cases, the plaintiff and one defendant were residents of West Virginia, while the other defendant was an out-of-state resident. *Cook*, 2012 WL 407261, at *4. Judge Copenhaver found that complete diversity was lacking and stated that assuming Section 1441(b) is procedural, it could not create jurisdiction where none existed under Section 1332(a). *Justice*, 2009 WL 853993, at *5. Further, "[a] non-resident defendant cannot remove an action if the citizenship of any codefendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant." *Id.* Accordingly, Defendants argument relating to the forum defendant rule does not provide an additional basis for removal and does not apply to this action because this action was not "otherwise removable" under Section 1332(a) because complete diversity does not exist.

Accordingly, Defendants have not carried the heavy burden required to establish that Plaintiff fraudulently joined Hypes as a defendant. By no means does this Court express an opinion regarding the viability or merit of Plaintiff's claims against any Defendant. This Court concludes only that under fraudulent joinder standards, Defendants have failed to show that Defendant Hypes was fraudulently joined. Accordingly, Plaintiffs' motions to remand are **GRANTED** because diversity jurisdiction does not exist.

### B. Award of Attorney's Fees and Costs

Plaintiff requests fees and costs incurred as a result of the removal of this action. (ECF No. 15 at 8.) Upon remanding a case to state court, this Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). In other words, "the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* Further, "[t]he ultimate decision as to whether or not fees and costs should be awarded is left to the sound discretion of the district court, and it is not necessary for the Court to find "bad faith" on the part of the removing party before making such awards." *Allen v. Monsanto Company,* 396 F.Supp.2d 728, 733 (S.D. W. Va. 2005) (citing *Watson v. Charleston*

14

law

*Hous. Auth.,* 83 F.Supp.2d 709, 712 (S.D. W. Va. 2000)). "The purpose, instead, is to reimburse a party for the costs associated with responding to an improper removal." *Id.*

Here, there is no indication that Defendants sought to remove the case to this Court "for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 140. The Court finds that Defendants' argument was made in good faith and Defendants had an objectively reasonable basis for removal. *Martin*, 546 U.S. 132. Thus, an award of attorney fees and costs is not appropriate.

IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motions to remand and **DENIES** fees and costs. (ECF Nos. 14, 46, 74, 113.) The Court hereby **REMANDS** this case to the Circuit Court of Kanawha County, West Virginia. The Court **DIRECTS** the Clerk to remove this action from the Court's docket. As this case is remanded, the Court does not reach Defendants' Motion to Exceed Page Limit, (ECF No. 8); Defendants' Motion to Dismiss, (ECF No. 9); Plaintiff's Motion to Strike Notice of Removal; (ECF No. 16); and Plaintiff's Motion to Amend Complaint, (ECF No. 28).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 23, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE